## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES SOO BAHK DO   :
MOO DUK KWAN FEDERATION, INC.,  :
                     :
       **Plaintiff,**       :
                     :
    **v.**                 :    **3:12-CV-00669**
                     :    **(JUDGE MARIANI)**
INTERNATIONAL TANG SOO DO   :
MOO DUK KWAN ASSOCIATION, et al., :
                     :
      **Defendants.**    :

**FILED**
**SCRANTON**

AUG – 4 2014

PER _____
      DEPUTY CLERK

### MEMORANDUM OPINION

### I.    Introduction

Presently before the Court is a Motion for Summary Judgment (Doc. 43) filed by the

Plaintiff on certain of the Defendants' counterclaims. For the reasons discussed below, the

Court will deny the Motion.

### II.    Factual Background and Procedural History[1]

Plaintiff, United States Soo Bahk Do Moo Duk Kwan Federation is a New Jersey

corporation involved in the "practice, teaching, and regulation" of a Korean form of martial

arts. (*See* Pl.'s Statement of Mat. Facts, Doc. 45, at ¶ 4.) The parties agree that "Tang Soo

---

[1] In their Answer to Plaintiff's Statement of Material Facts (Doc. 53), Defendants do not admit any fact without qualification. Instead, they often engage in lengthy and digressive legal arguments or interpretations of Korean history that repeat points raised in their brief, but which do not directly address the issue asserted as a material fact. (*See, e.g.,* Doc. 53 at ¶¶ 4, 5, 9, 14, 35.) As such, the Court's task in sorting out legitimately disputed and undisputed facts has been rendered much more difficult. Nonetheless, the facts discussed in this section are all ones which the Court finds, based on a neutral reading of the record before it, to not be subject to reasonable dispute.

Do" is the generic term for the type of martial art that Plaintiff practices. (*Id.* at ¶ 7; Defs.' Br. in Opp. to Pl.'s Mot. for Summ. J., Doc. 55, at 2-3.)  However, Plaintiff also holds registered trademarks on the related term "Moo Duk Kwan," which translates to "martial virtue institute," and on the symbol for Moo Duk Kwan: a fist surrounded by laurel leaves with words written in a scroll across the bottom. (Doc. 45 at ¶ 1; Doc. 53 at ¶ 1.)  Plaintiff argues that the term "Moo Duk Kwan" and its associated logo are properly registrable trademarks because, whereas "the generic name for the martial art taught by the Plaintiff and the Defendants is Tang Soo Do," the term Moo Duk Kwan was independently created by one Hwang Kee in South Korea in 1945 as a mark to designate a type of Tang Soo Do school that he founded. (Doc. 45 at ¶ 5.)  In the Plaintiff's words,

> Founder Hwang Kee chose the mark Moo Duk Kwan® to suggest the particular services provided by the school, including the style and practices he developed for instruction of martial arts.  This is similar to the name of an educational institution, a religious organization, or a grocery store, in that the trademark identifies the nature and quality of the services provided by the owner.

(Doc. 45 at ¶ 6.)  Hwang later founded the Plaintiff Moo Duk Kwan Federation, of which his son, H.C. Hwang, is the current president. (*See* H.C. Hwang Decl., Doc. 45-4, at ¶¶ 1, 3.)

Believing that the Defendants, owners of a Pennsylvania corporation called International Tang Soo Do Moo Duk Kwan Association, were engaged in the unauthorized use of its trademarks, Plaintiff filed this action in federal court on April 10, 2012. (*See* Compl., Doc. 1, at ¶¶ 4, 16-18.)  Plaintiff's most recent Complaint alleges claims for trademark infringement, trademark counterfeiting, and unfair competition under federal and

common law. (*See* Am. Compl., Doc. 27, at pp. 10, 12, 14.)  In response, Defendants

asserted a series of counterclaims.  (*See* Answer, Doc. 28, at pp. 8-12.)  Plaintiff—but not

Defendants—then filed a Motion for Summary Judgment, which is the subject of this

Opinion. (*See* Pl.'s Mot. for Summ. J., Doc. 43.)  That Motion seeks judgment on several of

Defendants' counterclaims, to wit: claims to cancel Plaintiff's trademark registrations for

genericness (Count I), for abandonment (Count III), and as based on fraud (Count IV), as

well as a general counterclaim for a declaratory judgment that Plaintiff's trademarks are

unenforceable (Count V).  (*See* Pl.'s Mot. for Summ. J., Doc. 43, at 1-2.)

## III.   Standard of Review

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  "As to materiality,

. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  The party moving for

summary judgment bears the burden of showing the absence of a genuine issue as to any

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed.

265 (1986).  Once such a showing has been made, the nonmoving party must offer specific

facts contradicting those averred by the movant to establish a genuine issue of material fact.

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695

(1990).  "Inferences should be drawn in the light most favorable to the non-moving party,

and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).  Nonetheless, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat summary judgment]; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### IV.   Analysis

#### a.  Cancellation of a Registered Trademark

"The Lanham Act, 15 U.S.C. § 1051 et seq., provides national protection for trademarks used in interstate and foreign commerce." *Berner Int'l Corp. v. Mars Sales Co.*, 987 F.2d 975, 979 (3d Cir. 1993).  Nonetheless, a registered trademark may be cancelled upon petition "by any person who believes that he is or will be damaged," *inter alia*, "[a]t any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered, or is functional, or has been abandoned, or its registration was obtained fraudulently." 15 U.S.C. § 1064(3).  Defendants allege counterclaims on several of these grounds.  It is to these counterclaims that the Court now turns.

#### i.  Cancellation for Genericness (Count I)

The Lanham Act "provides no protection for generic terms." *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008).  Generic terms are those "which function as the common descriptive name of a product class." *A.J. Canfield Co. v.*

*Honickman*, 808 F.2d 291, 296 (3d Cir. 1986).  In other words, a "generic term is one that refers to the genus of which the particular product is a species." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S. Ct. 658, 661, 83 L. Ed. 2d 582 (1985). "Generic terms are not registrable, and a registered mark may be canceled at any time on the grounds that it has become generic." *Id.*

The same principles apply when, as here, the term being challenged for genericness is a term in a foreign language.  As the Second Circuit has noted:

> It is a bedrock principle of the trademark law that no trader may acquire the exclusive right to the use of a term by which the covered goods or services are designated in the language. Such a term is "generic." . . .
> The same rule applies when the word designates the product in a language other than English. This extension rests on the assumption that there are (or someday will be) customers in the United States who speak that foreign language.  Because of the diversity of the population of the United States, coupled with temporary visitors, all of whom are part of the United States marketplace, commerce in the United States utilizes innumerable foreign languages.  No merchant may obtain the exclusive right over a trademark designation if that exclusivity would prevent competitors from designating a product as what it is in the foreign language their customers know best.  Courts and the USPTO apply this policy, known as the doctrine of "foreign equivalents," *see* 2 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*, § 12:41 at 12–83, 12–84 (1996 ed.), to make generic foreign words ineligible for private ownership as trademarks.

*Otokoyama Co., Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270-71 (2d Cir. 1999) (collecting cases).

Defendants argue that the trademarks "Moo Duk Kwan" and the corresponding logo must be cancelled for genericness because "[Defendants'] use of the marks and fist and laurel leaves design pre-date any of the Plaintiff's registrations by at least 20 years; and that

5

the registrations are comprised of terms that are generic for the services for which they are

registered." (Doc. 55 at 4.)  In other words,

> The Plaintiff actually registered terms that are commonly used in the martial
> arts industry.  The Plaintiff's registrations have lost whatever significance as
> trademarks they may have ever had due to its own conduct or omissions as
> the terms and designs of the Plaintiff's marks are ubiquitous for the Korean
> style karate called "Tang Soo Do" and is [sic] used by practitioners around the
> United States.

(Id. at 5.)

In support of this conclusion, Defendants make several arguments.  First, they argue

that Moo Duk Kwan was not created by Hwang Kee as Plaintiff alleges, but is in fact an

ancient art form which may date as far back as the year 794 A.D., when it was first used in

Japan by Emperor Kanmu "to promote chivalry and martial excellence" under the name

"Butokuden" ("Hall of Martial Virtue").  (Id. at 12.)  Moreover, Defendants allege that, even in

the United States, the marks and logos at issue "have been in common use in the United

States as far back as 1961," as evidenced by their use as patches worn during Tang Soo

Do gatherings and competitions and as advertisements for Moo Duk Kwan schools and

related services, all of which is captured in various karate magazines dating back to the

early 1960s that Defendants submitted to the summary judgment record.  (Id. at 6; see also

id. at 9 (citing Defs.' Exs. in Opp. to Summ. J. 1-44, 46-48, 50-51, 53, 55-56).)  Aside from

the evidence contained in old karate magazines, this historical argument depends in large

part on a book authored by Daniel Segarra, a former board member of the Plaintiff

federation, entitled The Secrets of the Warrior-Scholar: The Untold History of Tang Soo Do

6

*V 1.2.* (*See id.* at 9-10, 12-13; *see also* Defs.' Exs. in Opp. to Summ. J., Doc. 71, Ex. 69 (Segarra book).)

Second, Defendants argue that the term "Moo Duk Kwan" is a generic term meaning "name of a tang soo do school." (Doc. 55 at 11.) This comes from the glossary of terms contained in alleged Moo Duk Kwan founder Hwang Kee's book, *Tang Soo Do*, which defines "Moo Duk Kwan" as "Name of Tang Soo Do School." (Defs.' Exs. in Opp. to Summ. J., Doc. 66, Ex. 49, at 36.) However, it is unclear from a facial reading of the glossary whether this definition was intended to define Moo Duk Kwan as "the name of *any* Tang Soo Do school," as Defendants indicate, or, as Plaintiffs would argue, as only "the name of the specific Tang Soo Do school founded by Hwang Kee," in the same way that the term "General Motors" might be defined as "name of automotive company."

Third, Defendants argue that the fist-and-laurel-leaves emblem of Moo Duk Kwan was "in the public domain long before a registration was granted to the plaintiff." (Doc. 55 at 15.) In addition to referencing the documentary evidence from karate magazines discussed above, Plaintiff states that "a quick google search of 'martial arts patches' brings up hundreds of hits, with countless examples of patches containing the fist and laurel leaves, or Moo Duk Kwan." (*Id.*)

These arguments illustrate several disputes of fact that cannot be resolved on summary judgment.

7

First, there is the question of when the phrase "Moo Duk Kwan" was in fact coined. If, as Plaintiff argues, it was coined by Hwang Kee in 1945, then that could defeat a claim for genericness. If, on the other hand, the term was widely used in the United States, Korea, and/or Japan before Plaintiff registered its trademarks, as Defendants argue, then this could mean—though it need not necessarily do so—that "Moo Duk Kwan" is actually a generic term for the type of services that Plaintiff offers. Of course, this Court is neither equipped nor permitted to resolve such historical disputes at the summary judgment stage.

Second, and intertwined with the first question, is the fundamental question of what "Moo Duk Kwan" actually means. Even if it is undisputed that the direct translation is "martial virtue institute," (*see* Pl.'s Reply Mem. in Supp. of Mot. for Summ. J., Doc. 80, at 6), the parties dispute whether such a "martial virtue institute" refers to (a) a Tang Soo Do school generally, or (b) only to a Tang Soo Do school founded by Hwang Kee, as discussed above. There is not enough evidence in the record for the Court to determine that one definition must be right as a matter of law. Indeed, the glossary on which Defendants base their argument is ambiguous as to which definition applies. Evidence would need to be offered at trial to demonstrate what the writers of the glossary, Korean speakers, and/or people in the martial arts community would commonly understand the term to mean.

Third, there is the question of whether the fist-and-laurel-leaves emblem is generic. It must be determined at trial whether this emblem was actually designed by Hwang Kee and/or his successors, such that it may be the intellectual property of the Plaintiff, or

8

whether it is simply a generic mark that arose over the centuries without a known author and which therefore cannot be trademarked.  Again, this issue is in dispute and cannot be resolved on summary judgment.

Fourth, it is unclear whether the many uses of the Moo Duk Kwan name and logo that Defendants compile in their exhibits in opposition to summary judgment, based on Google searches and reviews of old karate magazines, are actually evidence of generic and widespread use of the name and logo.  They may in fact be, to the contrary, evidence of individual uses that were approved by the Plaintiff federation or even examples of the Plaintiff's own use of its own marks.  Without any context behind the various uses of the trademarks, the Court cannot know what kind of use is being displayed.  This factual dispute will have to be resolved at trial, when the authenticity, context, and meaning of Defendants' exhibits can be better established.

### ii.  Cancellation for Abandonment (Count III)

Abandonment "is [another] ground for the cancellation of marks."  *Ditri v. Coldwell Banker Residential Affiliates*, 954 F.2d 869, 873 (3d Cir. 1992).  The Lanham Act provides that:

> A mark shall be deemed to be "abandoned" if either of the following occurs:
> (1) When its use has been discontinued with intent not to resume such use.  Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment.  "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

9

> (2) When any course of conduct of the owner, including acts of
> omission as well as commission, causes the mark to become the
> generic name for the goods or services on or in connection with which
> it is used or otherwise to lose its significance as a mark. . . .

15 U.S.C. § 1127.

In order to prevail on a defense of abandonment, subsection (1) of the statutory

definition of abandonment imposes a "twin requirement of non-use and intent to abandon."

*U.S. Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 138 (3d Cir. 1981) (citing *Baglin v.*

*Cusenier Co.*, 221 U.S. 580, 31 S. Ct. 669, 55 L. Ed. 863 (1911)).  In deciding whether the

twin requirement has been met, courts "also bear in mind that abandonment, being in the

nature of a forfeiture, must be strictly proved." *Id.* at 139.  The nonuse that gives rise to

abandonment must consist of "much more than failure to prosecute promptly trademark

infringements, and even total, but temporary non-use of a name has, at times, been found

insufficient to support a finding of abandonment." *Id.*

> That [a trademark registrant] has tolerated some of its disaffiliated or
> disobedient chapters in the use of its marks does not constitute non-use.
> Consistent and proper use of those marks elsewhere in the United States,
> *see* [*U.S. Jaycees v. Philadelphia Jaycees*,] 490 F. Supp. [688,] 690 [E.D. Pa.
> 1979], defeats any claim of non-use. *Dawn Donut Co.* [*v. Hart's Food Stores,*
> *Inc.*], 267 F.2d [358,] 363 (abandonment occurs only when registrant fails to
> use its mark anywhere in the nation); *Johanna Farms, Inc. v. Citrus Bowl,*
> *Inc.*, 468 F. Supp. 866, 878-79 (E.D.N.Y. 1978) (no abandonment of mark
> used elsewhere in the United States).

*Id.*

Here, there is no evidence in the summary judgment record that Plaintiff has

discontinued its use of the trademarks with the intent not to resume them under subsection

10

(1). Indeed, Plaintiff has "consistently and properly" used its trademarks in the United States during the period in which Defendants allege that they have elapsed, by consistently conducting business here with them. This, according to *Jaycees, supra*, "defeats any claim of non-use." Likewise under *Jaycees*, Defendants' argument that Plaintiff "selectively enforce[s] infringement" by only litigating some infringements and not others, (*see* Doc. 55 at 17), even if accepted as true for summary judgment purposes, could not lead to the defense of abandonment, because it at most shows "a failure to prosecute promptly trademark infringements," which does not give rise to abandonment.

Nonetheless, the Court finds sufficient disputes of fact to warrant denying summary judgment under subsection (2) of the statutory definition of abandonment. As discussed in the preceding section of this Opinion on genericness, there is insufficient evidence in the record for the Court to determine on summary judgment whether the phrase "Moo Duk Kwan" or its associated logo was generic at the time that it was registered as a trademark by the Plaintiff. By the same token, there is insufficient evidence to determine whether Plaintiff's acts of commission or omission since registration have caused the term and logo to lose any significance that they may have had as registered trademarks. If the term or the logo has become a generic name in the time since they were registered, and if this genericness came about by Plaintiff's own course of conduct, then the trademark could be cancelled for abandonment. But in order to make this factual determination, the factfinder would need to, *inter alia*, resolve the questions of what "Moo Duk Kwan" and its associated

11

logo are understood to mean now, as well as the question of what occurred in the time since

registration that would have made the term or logo generic.  For the reasons discussed in

the preceding section, these are not questions that can be decided at summary judgment.

Thus, while the Court sees no evidence of an intent to abandon the trademarks in

the summary judgment record, there is a sufficient dispute of fact concerning the

applicability of subsection (2) of the statutory definition of abandonment to warrant denying

summary judgment on the abandonment claim as well.

### iii.   Cancellation Based on Fraud

Finally, a "third party may petition to cancel a registered service mark on the grounds

that the registration was obtained fraudulently." *Metro Traffic Control, Inc. v. Shadow

Network, Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997).  "Fraud in procuring a service mark

occurs when an applicant knowingly makes false, material representations of fact in

connection with an application." *Id.*  If the declarant who, in procuring a trademark, swears

that the applicant has a superior right to use the mark "subjectively believes [his own

declaration], there is no fraud, even if the declarant was mistaken." *Sovereign Military

Hospitaller Order of St. John of Jersualem, of Rhodes, and of Malta v. Florida Priory of

Knights Hospitallers of Sovereign Order of St. John of Jerusalem*, 702 F.3d 1279, 1289

(11th Cir. 2012).

In the present case, there are at least two material disputes of fact that prevent

summary judgment on the fraud counterclaim.

12

First, following the issuance of this Opinion, the counterclaims of genericness and descriptiveness[2] will still be left to be resolved at trial.  But the crux of Defendants' fraud argument is that Plaintiff committed fraud by claiming proprietary ownership in words and marks that were generic or were descriptive of common terms in the martial arts world, given that the term Moo Duk Kwan and its associated logo allegedly existed in the public domain for hundreds of years, and that any representations to the contrary were knowingly false. (*See* Doc. 55 at 19-20.)  To determine the merits of this argument, the factfinder will first have to determine whether there is enough evidence to side with the Defendants on the genericness and/or descriptiveness counterclaims.  But doing that will, at the very least, necessitate answering the disputed questions of material fact enumerated above, which cannot be decided on summary judgment.

Second, even if the trademarks were found to be invalid for genericness and/or descriptiveness, the factfinder would still need to determine whether Plaintiff's declarant *knowingly* represented the contrary.  The declarant's subjective mental state at the time of application is clearly a disputed issue of fact which cannot be resolved at the summary judgment stage.  Indeed, the Court is aware of no documents submitted to the record which demonstrate what the declarant thought at the time of application.

Accordingly, the Court must deny summary judgment on Defendant's fraud counterclaim as well.

---

[2] The counterclaim for descriptiveness (Count II) was not a subject of the Motion for Summary Judgment.

### b. Declaratory Judgment of Unenforceability (Count V)

Finally, Plaintiff seeks summary judgment on Defendants' counterclaim for a declaratory judgment that Plaintiff's trademarks are unenforceable. (Doc. 43 at 2.) This catch-all counterclaim alleges that "Plaintiff's marks are unenforceable on the ground that they are generic, descriptive, have been abandoned, and/or were obtained by fraud." (Doc. 28 at ¶ 90.)

Because all of the bases alleged in support of unenforceability are left to be resolved at trial, the Court cannot grant summary judgment on this counterclaim. It too must be resolved at trial in connection with its underlying subject matter.

## V.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 43) is **DENIED**. A separate Order follows.

Robert D. Mariani
United States District Judge

14