## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES SOO BAHK DO MOO DUK KWAN FEDERATION, INC., | : : : | |
| Plaintiff, | : : | |
| v. | : : | 3:12-CV-00669 (JUDGE MARIANI) |
| INTERNATIONAL TANG SOO DO MOO DUK KWAN ASSOCIATION, et al., | : : : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.    Introduction

Presently before the Court is a Motion for Partial Reconsideration (Doc. 91) filed by

the Plaintiff in response to the Court's Memorandum Opinion of August 4, 2014 (Doc. 89)

denying Plaintiff's Motion for Summary Judgment.  The Court's August 4 Opinion denied

summary judgment on four separate counterclaims.  (*See id.* at 3, 14.)  In the Motion for

Reconsideration, Plaintiff only challenges the Court's decision on one of these: the claim for

cancellation of Plaintiff's trademarks based on fraud.  (Mot. for Recons., Doc. 91, at 1.)  For

the reasons that follow, the Court will deny that Motion.

### II.    Standard of Review

"The purpose of a motion for reconsideration is to correct manifest errors of law or

fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909

(3d Cir. 1985).

Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

## III.    Background

The factual background giving rise to Plaintiff's Motion for Summary Judgment is discussed extensively in the Court's Memorandum Opinion denying the same. The Court relies on that previous statement for purposes of this Opinion, and will not restate the facts here.

In its previous Opinion, the Court denied summary judgment on the fraud counterclaim on the following bases:

First, following the issuance of this Opinion, the counterclaims of genericness and descriptiveness will still be left to be resolved at trial. But the crux of Defendants' fraud argument is that Plaintiff committed fraud by claiming proprietary ownership in words and marks that were generic or were descriptive of common terms in the martial arts world, given that the term Moo Duk Kwan and its associated logo allegedly existed in the public domain for hundreds of years, and that any representations to the contrary were knowingly false. (*See* Doc. 55 at 19-20.) To determine the merits of this argument, the factfinder will first have to determine whether there is enough evidence to side with the Defendants on the genericness and/or descriptiveness counterclaims.    But doing that will, at the very least, necessitate answering the disputed questions of material fact enumerated above, which cannot be decided on summary judgment.
Second, even if the trademarks were found to be invalid for genericness and/or descriptiveness, the factfinder would still need to determine whether Plaintiff's declarant *knowingly* represented the contrary.

2

The declarant's subjective mental state at the time of application is clearly a disputed issue of fact which cannot be resolved at the summary judgment stage. Indeed, the Court is aware of no documents submitted to the record which demonstrate what the declarant thought at the time of application.

(Mem. Op., Aug. 4, 2014, Doc. 89, at 13.)

Plaintiff argues that this passage contains three clear errors of law and fact. First, by stating that "the term Moo Duk Kwan and its associated logo allegedly existed in the public domain for hundreds of years," Plaintiff argues that the Court committed an error of law because prior uses in foreign countries are irrelevant to a claim of fraud in a trademark application. (Pl.'s Br. in Supp. of Mot. for Recons., Doc. 92, at 2-4.) Second, Plaintiff argues that the Court committed an error of law when it relied on prior generic or descriptive *uses* of the term "Moo Duk Kwan" and its associated logo to deny summary judgment, because, to sustain a claim for cancellation based on fraud, Defendants would have to show not use, but rather that "another party has a superior right to use the term *as a mark in the United States*," when "mark" is a statutorily-defined term meaning

> any word, name, symbol, or device, or any combination thereof—
>     (1) used by a person, or
>     (2) which a person has a bona fide intention to use in commerce and
>         applies to register on the principal register established by this chapter,
> to identify and distinguish his or her goods, including a unique service, from
> the services of others and to indicate the source of the services, even if that
> source is unknown.

(*Id.* at 6-7 (quoting 15 U.S.C. § 1127).) Third, Plaintiff argues that the Court committed an error of fact when it stated that it was aware of no documents which demonstrate what declarant H.C. Hwang thought at the time that he made the oath at issue as part of his

3

trademark application. (*Id.* at 9-10.) This last point is relevant because a claim of fraud in procuring a service mark requires a showing that an applicant "knowingly" made false representations of fact. *See Metro Traffic Control, Inc. v. Shadow Network, Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997).

## IV.    Analysis

### a.  Uses Outside the United States

The first ground for reconsideration may be easily disposed of. Even if the Court assumes, without deciding,[1] that prior uses of the trademarked information made outside the United States are irrelevant to a fraud claim, the Court's statement "the term Moo Duk Kwan and its associated logo allegedly existed in the public domain for hundreds of years," cannot fairly be read as referring exclusively to foreign uses. While it is true that the class of uses that "allegedly existed in the public domain for hundreds of years" would refer to uses that occurred in Japan and Korea, it also refers to uses in the United States. As the Court noted in its Opinion, the Defendants have submitted exhibits sufficient to create an issue of fact that

> the marks and logos at issue "have been in common use *in the United States as far back as 1961*," as evidenced by their use as patches worn during Tang Soo Do gatherings and competitions and as advertisements for Moo Duk Kwan schools and related services, all of which is captured in various karate magazines dating back to the early 1960s that Defendants submitted to the summary judgment record.

---

[1] Because the issue of whether foreign uses can form the basis for a fraud claim was not a necessary part of the Court's Memorandum Opinion, it would be inappropriate to rule on it on reconsideration.

4

(Doc. 89 at 6 (emphasis added).)  The declaration made in support of the trademark

application is dated December 12, 1985.  (Application for Collective Membership Mark

Registration, Doc. 47, Ex. 12, at 2.)  The year 1985 is 24 years after 1961 and therefore

within the "hundreds of years" during which the defendant claims the uses were in the public

domain.  Therefore, even if the Court were to limit the class of uses only to those made

within the United States, its statement would be an accurate description of the factual

record.

### b.  Oath of Ownership and Superior Rights

The second ground for reconsideration is more complicated.  The Court held that a

disputed issue of material fact existed as to whether H.C. Hwang knowingly believed he was

making a false statement when he swore that the trademark applicant was the owner of the

mark and that no one else had a "superior right" to it.  It did so on the basis that it found a

dispute as to whether or not these marks had been in the public domain for hundreds of

years.  (Doc. 89 at 12-13.)  If they were, and if the factfinder therefore found them generic

and/or descriptive, then the Court stated that the factfinder could determine that Hwang

committed fraud in the application.  (Id. at 13.)

Now Plaintiff brings to the Court's attention a different line of cases, which state that

the phrase "superior right" refers only to the right to use the applied-for term or a logo as a

mark, and that fraud may not be found "where the ownership statement is made by an

applicant with knowledge of another's right to use the applied for mark in a descriptive

sense, in an ornamental manner, or in any way that would be protected from the threat of litigation as a fair use." *Kelly Servs., Inc. v. Greene's Temporaries, Inc.*, 25 U.S.P.Q. 2d 1460, 1992 WL 430461, at *3 (T.T.A.B. 1992); *see also id.* ("Registration of a word or design carries with it only the presumption of an exclusive right to use the same *as a mark*. It has been clearly held, in many cases, that registration of a word by one party does not preclude others from making descriptive or non-trademark uses of the word.") (collecting cases); 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 31:76 (4th ed. 1996) ("There is no fraud if applicant signs the oath and is aware of another party's prior use of the designation in a nontrademark sense, such as use in a purely descriptive sense or in an ornamental manner.")

The issues presented in these cases were not discussed in the briefs supporting or opposing summary judgment, except in the most elliptical sense. (*See* Pl.'s Br. in Supp. of Mot. for Summ. J., Doc. 44, at 13 (stating that "[w]ithout evidence that the Plaintiff believed that another party had the *right to use* the marks in commerce as of the date of the application, the claim of fraud fails," without further definition or elaboration). But even after being provided with them, the Court cannot conclude that, on the record before it on summary judgment, it made a clear error of law or fact. The oath that H.C. Hwang made in support of Plaintiff's trademark application states that Hwang

> believes [the applicant corporation] to be the owner of the service mark sought to be registered; to the best of his knowledge and belief no other person, corporation, or association has the right to use said mark in commerce either in the identical form or in such near resemblance thereof as

6

to be likely, when used with the services of such other person, to cause
confusion, or to cause mistake, or to deceive . . . .

(Doc. 47, Ex. 12 at 2.)

Plaintiff focuses on the second clause of this quote, which states that no one has a

superior right to the trademark. If this were the dispositive portion, Plaintiff may be correct

to state that the Court erred, because Defendants at no time claimed that anyone else had a

"superior right" to the mark, but rather only claimed that the term and logo were generic

and/or descriptive, and therefore cannot be owned by the Plaintiff or anyone else. However,

the Court believes that it is the first clause that applies to the issue at hand. That is, the

dispositive issue is Hwang's belief that the applicant "is the owner of the service mark

sought to be registered." As the Court previously indicated, by claiming such "proprietary

ownership in words and marks that [may later be shown to be] generic or . . . descriptive of

common terms in the martial arts world," there is an issue of fact as to whether Hwang

committed fraud. (Doc. 89 at 13.) If Hwang knew at the time of application that the marks

sought to be registered were generic and/or descriptive terms that were as commonly used

as Defendants claim, then he may indeed have acted fraudulently by claiming ownership,

because marks in such common use could not be owned.[2]

---

[2] In this sense, the Court finds Defendants' "pizza" analogy to be apt. Defendants claim that
Plaintiff's argument is akin to claiming that, because no person has an existing right to use the mark
"pizza," it would not be fraud for someone else to claim ownership of it. (See Defs.' Br. in Opp. to Mot. for
Recons., Doc. 93, at 3-4.) Clearly, no one has a superior right to the term "pizza" because the term itself
cannot be owned. Therefore, any claim of ownership, if made with the requisite mental state, would be
fraudulent. If at trial the terms and logos in this case are found to also be in common use such that they

The cases that Plaintiff cites are not to the contrary. In those, courts held that a properly registrable trademark would not be cancelled for fraud just because there were other proper nontrademark uses for the mark. Here, on the other hand, the question is whether the marks were ever properly registrable at all. If they were not, and if Hwang knew that, then a sworn declaration to the contrary may indeed support a claim of fraud. *Cf. In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) ("[W]e hold that a trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO."). Clearly, claiming ownership where no ownership is known to exist constitutes a "false, material representation with the intent to deceive."

This is not to say that a fraud claim along these lines will ultimately be successful. It is only to say that, at the summary judgment stage, a determination that Hwang cannot have committed fraud as a matter of law is premature.

### c. Declarant's State of Mind

This brings us to the third ground for reconsideration. Here, it is technically true that H.C. Hwang filed a sworn affidavit as to his state of mind when he filed the trademark application, as Plaintiff asserts. (*See* Doc. 92 at 10.) Therefore, the Court's statement that it was aware of "no documents" demonstrating his state of mind must be considered in light of the well-recognized rule that an affidavit of one charged with fraud attesting to the

---

may not be registered, and if Hwang knew that, then he may be in the same place as someone who attempted to trademark the term "pizza," i.e., may have committed fraud.

propriety of his intentions is insufficient to require the grant of summary judgment. That is, the mere fact that Hwang claimed an exculpatory state of mind, even in a sworn affidavit, is insufficient to eliminate all disputes of fact. Courts have recognized that, in the context of trademark litigation, because deceptive intent can by its nature only be definitively known to the applicant accused of fraud, it "is rarely available" as direct evidence, and therefore "such intent can be inferred from indirect and circumstantial evidence." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008); *see also In re Bose Corp.*, 580 F.3d 1240, 1244 (Fed Cir. 2009) (agreeing with a previous decision that "intent must often be inferred from the circumstances and related statement made"). If this were not the case, then all that would be necessary to defeat a claim of fraud would be for the accused party to deny it. Obviously, this would effectively eliminate fraud as a cause of action.

Moreover, as the Court noted in its summary judgment Opinion, there is a great deal of evidence of prior uses of the relevant trademarks in the record. (*See* Doc. 89 at 13.) Such evidence of prior use is at least circumstantial evidence that can create a dispute of fact as to whether Hwang knew that his statement that the applicant is "the owner of the service mark" was false. Again, whether this evidence turns out to be sufficient at trial is irrelevant at the summary judgment stage. All that matters now is that there is sufficient evidence in the record to create a material dispute of fact.

Accordingly, the Court did not commit a clear error of fact or law in denying summary judgment.

## V.   Conclusion

For the reasons discussed above, Plaintiff's Motion for Partial Reconsideration (Doc. 91) is **DENIED**.  A separate Order follows.

Robert D. Mariani
United States District Judge